# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| SHERRY MALACINA, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 12 C 6077** |
| | ) | |
| v. | ) | **Magistrate Judge Sidney I. Schenkier** |
| | ) | |
| MEIJER STORES LIMITED | ) | |
| PARTNERSHIP, MEIJER GREAT | ) | |
| LAKES LIMITED PARTNERSHIP, | ) | |
| and MEIJER, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

On July 3, 2012, plaintiff Sherry Malacina filed a three-count complaint against defendants Meijer Stores Limited Partnership, Meijer Great Lakes Limited Partnership, and Meijer, Inc. (collectively, "defendants" or "Meijer") alleging that each defendant was negligent under Illinois common law and thus liable for damages she suffered in a slip and fall in a Meijer store in Rolling Meadows, Illinois (doc. # 1, Ex. A: Compl.). On August 22, 2012, upon filing an amended notice of removal, defendants removed the case to federal court (doc. # 8). Defendants have moved for summary judgment on plaintiff's claims (doc. # 23: Defs.' Mot. for Summ. J). For the reasons that follow, the Court grants defendants' motion for summary judgment.

## I.

The legal standards governing motions for summary judgment are well-established. Summary judgment is appropriate where the moving party establishes that there is no genuine

---

[1]On September 20, 2012, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the case was assigned to this Court for all proceedings, including the entry of final judgment (doc. # 11).

issue as to any material fact and that she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the nonmovant shows that there is an absence of evidence to support the nonmoving party's case, the nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013) (internal citations and quotations omitted).

In deciding a motion for summary judgment, we "construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen'l Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013). We do not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Stokes v. Board of Educ. of the City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). That said, we are mindful that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## II.

We begin by setting forth the material undisputed facts established by the parties' submissions, made pursuant to Local Rule 56.1. "In determining what is disputed, we focus not only on whether the parties profess to dispute a fact, but also on the evidence the parties offer to support their statements." *Barkl v. Kaysun Corp.*, No. 10 C 2469, 2011 WL 4928996, at *1 n.2 (N.D. Ill. Oct. 13, 2011) (citing *Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 899 n.2 (N.D.

2

Ill. 2010)). "We review only those facts whose substance would be admissible at trial under a form permitted by the Federal Rules of Evidence, although the form produced at summary judgment need not be admissible." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010). The following facts are undisputed unless otherwise noted by the Court.

On September 3, 2010, Ms. Malacina, her adult son Adam Malacina, and his friend Dennis Wojkovich entered the Rolling Meadows Meijer store at around 10:00 p.m. (doc. # 36, Ex. 2: Pl.'s Stmt. of Facts ("PSOF" at ¶ 2); doc. # 25: Defs.' Stmt. of Facts ("DSOF") at ¶ 26). The store had experienced a power outage at around 7:00 p.m. that evening, and the emergency lighting was still activated at the time Ms. Malacina, Adam, and Dennis entered the store (PSOF at ¶ 5). The Meijer Store Manager, Jonathan Capps, contacted ComEd, but ComEd did not give him an estimated time as to when the power would be restored (*Id.* at ¶ 7). A Meijer Store detective, Stan Blustein, estimated that the emergency lighting operated at 50 to 70 percent of the brightness of the store's regular lighting (doc. # 38: Defs.' Resp. to PSOF at ¶ 10).[2] No store announcements or signs informed customers that the emergency lights were on due to a power outage (PSOF at ¶¶ 13-14).

From outside the store, Ms. Malacina could not tell that the store's lighting was dimmer than normal (PSOF at ¶ 22), but Adam and Dennis could tell that the lighting inside the store did not appear normal (DSOF at ¶ 27). The dimmer-than-normal lighting condition, however, was obvious to anyone immediately upon entering the store, including Ms. Malacina (*Id.* at ¶¶ 25, 28). Ms. Malacina and her son described the lighting as shadowy and inconsistent throughout the store (PSOF at ¶¶ 23, 34). While Ms. Malacina recognized that the lighting condition was hazardous and that she had numerous courses of action she could have taken to avoid that

---

[2]As defendants correctly point out, plaintiff misstates Mr. Blustein's testimony as "50 to 70 percentage dimmer" than the store's normal lighting (Defs.' Resp. to PSOF at ¶ 10).

hazard, she nevertheless entered the store to make a purchase, taking extra care to walk slowly and safely (DSOF at ¶¶ 30-33). She went by herself to retrieve wrapping paper for purchase, while her son and his friend went elsewhere in the store (*Id.* at ¶ 34). As a result, neither Ms. Malacina's son nor his friend witnessed Ms. Malacina's fall (*Id.*).

In her deposition, Ms. Malacina testified that while walking back to the front of the store to check out with her purchase, at approximately 10:10 p.m., she felt her left foot slip, then fell down with her right shoulder striking the floor (PSOF at ¶ 26). At the time this occurred, Ms. Malacina was wearing high-heeled shoes that she often wore (DSOF at ¶¶ 18-19). Ms. Malacina denied that she had tripped, and testified that this was the only area of the store where she had experienced any slippage while walking (PSOF at ¶¶ 26, 28). Ms. Malacina testified that while she was sitting on the floor, "maybe my leg felt a little, like, it was damp, wet, maybe cold feeling" (DSOF, Ex. 2: Malacina Dep. at 65:18-20). Later in her deposition, Ms. Malacina reiterated that "while I was sitting there, I did for that moment feel that there was like this wetness, dampness on there" (*Id.* at 136:7-9). Ms. Malacina admits that she does not know for sure if her foot stepped into the dampness that she says she felt on the back of her thigh (DSOF at ¶ 61). In addition, Ms. Malacina never observed any substance on the store floor, and her son and his friend did not observe any substance on the floor when they reached her after her fall (*Id.* at ¶¶ 36-39).

The Meijer store detective, Mr. Blustein, and the store manager, Mr. Capps, approached Ms. Malacina shortly after she fell; she was still on the floor and was in obvious pain (DSOF at ¶ 47; PSOF at ¶¶ 15-16). Store cameras did not record the fall (DSOF, Ex. 7: Blustein Dep. at 23:1-2). In their depositions, Mr. Capps and Mr. Blustein testified that they did a visual survey of the floor area at that time but did not observe anything on the floor that could have caused her

fall (DSOF at ¶ 47). They further testified that they conducted a more thorough investigation after Ms. Malacina was removed from the store to determine if any foreign substance or hazard may have caused her fall (*Id.* at ¶ 48). Mr. Capps testified that he and Mr. Blustein got down on the ground to feel for a clear substance, but they did not see or feel anything (*Id.* at ¶ 49; DSOF, Ex. 8: Capps Dep. at 99:5-18). Mr. Blustein also photographed the area of the floor where the fall occurred, and it is undisputed that the photographs do not show any foreign substance on the floor (DSOF at ¶ 49).[3]

William Rodgers and David Strojny were the responding paramedics (DSOF at ¶ 55). Mr. Rodgers testified that Ms. Malacina rated her pain as the worst pain she ever had, 10 out of 10 (PSOF at ¶ 17). The paramedics administered Fentanyl, a powerful analgesic, for Ms. Malacina's pain before taking her to the hospital in a gurney (*Id.* at ¶¶ 15, 18). While Ms. Malacina testified that she does not remember being asked how she fell, Mr. Rodgers' written report of the fall stated that Ms. Malacina said she "just tripped while walking, falling on her right shoulder" (DSOF at ¶ 59; DSOF, Ex. 11: Rodgers Dep., Ex. 1: EMT Report).

Later that night, after returning from the hospital, Ms. Malacina observed a dried residue on the back of her pants (DSOF at ¶ 60). A few days later, she observed a residue on the bottom of her shoes (*Id.*). Photographs taken of Ms. Malacina's pants, however, do not show any stain, residue, or foreign substance, and the pants are no longer available (*Id.* at ¶¶ 64-65). Ms. Malacina does not know the source of the residue on her pants or shoes (*Id.* at ¶¶ 60-63, 66).

---

[3]Ms. Malacina disputes that the photographs accurately depict the lighting conditions as they existed when she fell (*Id.* at ¶ 51). In her deposition testimony, Ms. Malacina testified that the lighting conditions of the aisle as shown in the photographs was "a little bit lighter than what I remember" from the time of the fall (DSOF, Ex. 2: Malacina Dep. at 133:17-18).

In her complaint, Ms. Malacina asserts a negligence claim against each of the three defendants. To prevail on an ordinary negligence claim under Illinois law, a plaintiff must prove that: (1) the defendant owed a duty of reasonable care to the plaintiff; (2) the defendant breached the duty; and (3) the breach was the proximate cause of the plaintiff's injury. *McCarthy v. Target Corp.*, No. 09 C 1548, 2012 WL 967853, at *5 (N.D. Ill. Mar. 19, 2012) (citing *Wiegman v. Hitch-Inn Post of Libertyville*, 721 N.E.2d 614, 620 (Ill. App. 1999)). Ms. Malacina argues that she has presented sufficient facts for a trier of fact to find that defendants' negligence caused her injuries, because "but for" their decision to keep the Meijer store open despite the low lighting conditions, she or defendants would have discovered the substance that ultimately caused her to slip and fall (doc. # 36: Pl.'s Resp. at 10-11). For the reasons set forth below, we disagree.

For their part, defendants argue that the undisputed facts show that they did not owe a duty of care to Ms. Malacina because the diminished lighting conditions in the Meijer store were "open and obvious" (doc. # 24: Defs.' Mem. at 2). Indeed, while landowners are generally liable to invitees for foreseeable risks of harm on their property, they are not liable to invitees for physical harm caused by a condition on the land "whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Kleiber v. Freeport Farm and Fleet, Inc.*, 942 N.E.2d 640, 646-47 (Ill. App. 2010) (citing *Ward v. Kmart Corp.*, 554 N.E.2d 223, 227-28 (Ill. 1990); Restatement (Second) of Torts § 343A(1)).

Ms. Malacina does not dispute that the diminished lighting in the Meijer store was "open and obvious" (Pl.'s Resp. at 3). Nevertheless, she argues that defendants owed a duty to exercise reasonable care to protect invitees like her from harm in spite of the open and obvious nature of

the danger, because they should have anticipated that keeping the store open with diminished lighting could result in injury (*Id.* at 8). In the alternative, Ms. Malacina contends that defendants owed a duty because they should have foreseen that the diminished lighting conditions would create a foreseeable "distraction" that prevented her from discovering the alleged slippery substance on the floor that allegedly caused her to fall (*Id.* at 6-7).

The parties spill a substantial amount of ink debating this question of whether defendants owed Ms. Malacina any duty of care once she decided to enter and shop at a store that was not fully lit. We need not weigh in on this debate. Even assuming that defendants breached a duty to Ms. Malacina by allowing her to enter a store that had diminished lighting, Ms. Malacina has failed to cite to evidence that would allow a jury reasonably to find that any breach of duty by defendants proximately caused her fall and subsequent injuries.

While proximate cause is generally a question of fact, it becomes a question of law when the facts alleged demonstrate that a party would never be entitled to recover. *Strutz v. Vicere*, 906 N.E.2d 1261, 1264 (Ill. App. 2009). It is well-settled in Illinois that "[n]o liability can exist unless the defendant's alleged negligence is the legal cause of the plaintiff's injury and if the plaintiff fails to establish the element of proximate cause, she has not sustained her burden of making a *prima facie* case," and summary judgment is appropriate. *Kimbrough v. Jewel Cos., Inc.*, 416 N.E.2d 328, 331 (Ill. App. 1981). While the proximate cause element of a negligence action may be established through circumstantial or direct evidence, the inference that arises from circumstantial evidence must be one that can be reasonably drawn. *Bermudez v. Martinez Trucking*, 796 N.E.2d 1074, 1078-79 (Ill. App. 2003). Proximate cause may not be "predicated upon surmise or conjecture as to the cause of the injury; proximate cause can only be established when there is a reasonable certainty that defendant's acts caused the injury." *Kimbrough*, 416

N.E.2d at 331. "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the possibilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Hudson v. Twenty-Three East Adams Street Corp.*, 787 F. Supp. 141, 143 (N.D. Ill. 1992) (quoting *Collins v. Am. Optometric Ass'n*, 693 F.2d 636, 640 (7th Cir. 1982)).

To establish proximate cause in a slip and fall case, the plaintiff must "prove that some condition caused the fall and that this condition was caused by the defendant." *Kimbrough*, 416 N.E.2d at 332. In this case, Ms. Malacina does not (and cannot) claim that the diminished lighting alone was the proximate cause of her fall. Rather, she admits that her claim is that the diminished lighting "resulted in her being unable to see an unknown and unidentified liquid substance on the floor of the store, which caused her to slip, fall and injure herself" (Pl.'s Resp., Ex. 1: Pl.'s Resp. to DSOF at ¶ 5).

Thus, to create a triable issue, Ms. Malacina must point to evidence that could allow a jury reasonably to find that she actually stepped in a foreign substance, and that the substance either (1) was on the floor due to the acts of the defendant or its employees, or (2) that the defendant or its employees knew or should have known of the existence of the foreign substance. *Redenbaugh v. Residence Inn by Marriott, LLC*, No. 11 C 3174, 2013 WL 1986382, at *3, 7 (N.D. Ill. May 10, 2013). "The occurrence of an accident does not support an inference of negligence, and, absent positive and affirmative proof of causation, plaintiff cannot sustain the burden of establishing the existence of a genuine issue of material fact." *Strutz*, 906 N.E.2d at 1264 (internal quotations omitted); *see also Erkol v. Marshall Field & Co*, No. 88 C 1171, 1989 WL 18248, at *2-3 (N.D. Ill. Mar. 1, 1989) ("[T]he plaintiff's claim fails if no further evidence is offered other than the presence of the substance and the occurrence of the injury.").

Here, Ms. Malacina has not presented evidence sufficient to create a triable issue concerning whether there was a slippery substance on the floor, much less how any such substance got there. There is no video or photographic evidence of any substance on the floor. Not one witness – neither Ms. Malacina, her son, his friend, nor any store employee – observed any substance on the store floor either at the time of Ms. Malacina's fall or later, upon closer inspection. Although Ms. Malacina testified that she felt wetness for a moment while she was on the store floor and noticed residue on the back of her pants later that night, it is undisputed that she does not know if her foot stepped into whatever caused the dampness she later recalled feeling on the back of her thigh or if the residue on her pants came from the Meijer store (Pl.'s Resp. to DSOF at ¶¶ 61, 66). And, Ms. Malacina concedes that if there was a substance on the floor, she does not know how it got there or how long it was on the floor before she fell (*Id.* at ¶¶ 69-70).

This evidence falls far short of what is needed to establish a genuine issue of material fact as to proximate cause. In *Erkol*, 1989 WL 18248, at *3-4, for example, the court granted summary judgment for the defendant where the only evidence that a foreign substance existed on the floor where the plaintiff fell was that the plaintiff noticed her hand and dress were a little wet after the fall. The court held that in the absence of any other evidence as to the existence of the substance, the source of the substance, or whether the plaintiff actually stepped in it, the plaintiff's proximate cause claim was based on "mere conjecture." *Id.* at *3. Similarly, in *Atkins v. United States*, No. 93 C 243, 1995 WL 153283, at *4-5 (N.D. Ill. Apr. 6, 1995), the court granted summary judgment to the defendant because the plaintiff's testimony that she had slipped on a "sticky filmy substance" on the floor and had felt "wetness" on her hand after she fell was not sufficient to establish that she actually slipped on a foreign substance, what the

substance was, or that the substance was on the ground as a result of the defendant's negligence. *See also Kimbrough*, 416 N.E.2d at 331-32 (affirming summary judgment for the defendant where the plaintiff testified in her deposition that while she had seen something that looked like grease on the floor, she did not know whether it was grease, whether it was slippery, and most importantly, whether she had stepped on it and whether it had caused her fall, and there were no other witnesses to the incident).

Indeed, courts have granted summary judgment for defendants in other slip and fall cases on evidentiary records even more favorable to the plaintiff than the one that has been presented here. *See, e.g., Galbreath v. Wal-Mart Stores, Inc.*, No. 10 C 2065, 2011 WL 1560669, at *4-5 (C.D. Ill. Apr. 25, 2011) (granting summary judgment for the defendant where the plaintiff claimed that the defendant breached its duty of care when it allowed butter to remain on the floor but the plaintiff admitted that she did not know how the butter came to be on the floor and she did not claim that the butter was placed on the floor by the negligence of the defendant or one of its employees); *Olinger v. Great Atlantic & Pacific Tea Co.*, 173 N.E.2d 443, 446 (Ill. 1961) (affirming grant of summary judgment for the defendant where the plaintiff and witnesses had observed a foreign substance on the floor near where the plaintiff had fallen, but there was no evidence offered to sustain a reasonable inference that the substance was there through the act of the defendant or his servants or that they had actual or constructive notice that the substance was there); *Tomsczak v. Planetsphere, Inc.*, 735 N.E.2d 662, 667-68 (Ill. App. 2000) (affirming grant of summary judgment for the defendant where the plaintiff asserted that she slipped on water on the surface of a roller skating rink, but neither the plaintiff nor any witnesses saw the water before she fell, and thus, she could not show that the defendant or its employees knew or should have known of the existence of the water).

The paucity of evidence as to the presence of a substance on the floor, how it got there, and how long it remained on the floor dooms Ms. Malacina's claim that the diminished lighting in the Meijer store caused her to slip and fall by preventing her from seeing a substance on the floor. In cases where courts have found sufficient evidence that a defendant's negligence in maintaining adequate lighting was the proximate cause of a plaintiff's slip and fall, the existence of a slippery substance on the floor was not in question. *See, e.g.*, *Rendleman v. ABA Bldg. Maint., Inc.*, 583 N.E.2d 703, 705-06 (Ill. App. 1991) (holding that a genuine issue of material fact existed as to whether diminished lighting in the store proximately caused the plaintiff to fall on the freshly waxed floor where there was evidence that adequate lighting would have allowed the plaintiff to see that the floor was freshly waxed); *Weber v. Chen Enters., Inc.*, 540 N.E.2d 957, 960 (Ill. App. 1989) (holding that a genuine issue of material fact existed as to whether inadequate illumination in the restaurant parking lot at the time of the plaintiff's fall proximately caused her to fail to discover the natural accumulation of ice and snow that caused her fall).

We further note that even if the evidence could permit a reasonable inference that there was a slippery substance on the ground, any link between the lighting and Ms. Malacina's fall is tenuous at best. In response to her attorney's question whether she believed the diminished lighting contributed to her fall, she stated: "Yes . . . because if there was something on the floor, which I believe there was, I could not see it because of the lighting. If it had been brighter I would have seen it" (Malacina Dep. at 134:6-14). However, Ms. Malacina wavered in response to defendants' attorney's follow-up question regarding whether she "would have seen whatever was on the floor" if the lighting had been brighter (*Id.* at 146:2-5). Ms. Malacina responded, "Yes, *might have* seen it, yes" (*Id.* at 146:6 (emphasis added)). Further, Ms. Malacina agreed that she did not know for certain whether there was anything on the floor, and she could only

11

speculate as to whether she would have seen something that may or may not have been on the floor if the lights had been fully on (*Id.* at 146:10-15, 147:6-10).

"It is axiomatic that liability cannot be premised merely upon surmise or conjecture as to the cause of the injury." *Rogers v. Matanda, Inc.*, 913 N.E.2d 15, 21 (Ill. App. 2009) (quotations and citations omitted). Here, as in *Rogers*, "[t]here is simply insufficient evidence regarding the cause of the plaintiff's fall," and to allow the case to go to a jury in the absence of sufficient evidence of proximate cause would only invite conjecture and speculation as to the cause of Ms. Malacina's fall. *Id.*

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment (doc. # 23). The case is terminated.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: March 18, 2014**